**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

FOX & ROACH LP,                          :
                                         :
            **Plaintiff,**                   :
                                         :          **CIVIL ACTION**
    v.                                   :
                                         :          **NO. 19-2352**
GERALD J. BOBEREK, et al.,               :
                                         :
            **Defendants.**                  :

**MEMORANDUM**

**TUCKER, J.**                                              **June __9th__, 2021**

Presently before the Court are Defendants Gerald J. and Ann M. Bobereks' Motion for Summary Judgment (ECF No. 19), Plaintiff Fox & Roach LP's Response in Opposition and Cross-Motion for Summary Judgment (ECF No. 20), Defendants' Reply (ECF No. 23), and Plaintiff's Response (ECF No. 24). Upon careful consideration of the Parties' submissions and exhibits, and for the reasons set forth below, both motions are denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

On May 20, 2014, Plaintiff Fox & Roach LP and Defendants Gerald J. and Ann M. Boberek entered into an Exclusive Rental Listing Agreement for a property located in Ambler, Pennsylvania. The one-year Agreement ran from May 19, 2014 to May 19, 2015. Per the terms of the Agreement, Plaintiff would secure a tenant for the property and Defendants would pay Plaintiff a broker's fee equivalent to one month's rent. If a tenant purchased the property, Defendants would pay Plaintiff a broker's fee of five percent of/from the sale price.

---

[1] In the Factual and Procedural Background section, the Court draws from the Statement of Stipulated Material Facts submitted by Defendants in their Motion for Summary Judgment. ECF No. 19. The Court will not cite to each statement. If any discrepancies are present, the Court will cite to Plaintiff's Response to Stipulated Statement of Facts. ECF No. 20.

Plaintiff procured tenants who executed a one-year lease—June 1, 2014, to June 1, 2015— for the property. Defendants paid Plaintiff a commission (the broker's fee) of $8,000.00, the equivalent of one month's rent. The tenants renewed the lease for an additional year from June 1, 2015 to December 1, 2016. Defendants claim that Plaintiff orally waived Defendants' responsibility to pay a commission on the lease extension, so the tenants and Defendants extended the lease without Plaintiff's involvement. Pl.'s Resp. Stip. Facts ¶ 12 (ECF No. 20). At the expiration of the lease, the tenants expressed interest in purchasing the property, but were not financially prepared to do so. Pl.'s Resp. Stip. Facts ¶ 15. With Defendants' assistance, the tenants secured financing and purchased the property for $2,050,000.00. Pl.'s Resp. Stip. Facts ¶ 15.

On May 30, 2019, Plaintiff filed a breach of contract action with this Court. Plaintiff argues that it is owed a broker's fee for the sale of the property because when it procured tenants, those tenants were ready, willing and able to purchase the property. Pl.'s Resp. Stip. Facts ¶¶ 8, 15. Defendants filed this Motion on December 20, 2019. Defendants seek summary judgment in their favor arguing that the expiration of the Agreement nullifies the Parties' exclusive relationship, and that Plaintiff orally waived its right to future commissions. Defs.'s. Mem. Supp. 1 (ECF. No. 19).

## II. STANDARD OF REVIEW

Summary judgment can only be awarded when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, (1986); *Dee v. Borough of Dunmore*,

549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, she has the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains her initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue of fact for trial. *See Anderson*, 477 U.S. at 249 (citations omitted); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the Court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### The Scope of Plaintiff's Role in Procuring a Buyer for the Property Presents a Genuine Issue of Material Fact.

Defendants move for summary judgment on the basis that Plaintiff is no longer entitled to the benefits of the disputed contract. Specifically, Defendants argue that the finding fees for lease renewals, and the five percent commission for procuring a buyer that the parties initially contracted for are void because the expiration of the Agreement after one year nullified the Parties' exclusive relationship, and Plaintiff orally waived its right to future commissions. As such, Defendants reason that without a valid agreement, Plaintiff no longer has a claim. To support their argument, Defendants rely primarily on *Senderling v. Boldwin*, 92 Pa. Super. 398 (1928) and *Coldwell Banker Phyllis Rubin Real Est. v. Romano*, 422 Pa. Super. 319, 328 (1993). However, neither case is precisely analogous to the facts in this matter. In *Senderling*, the broker/plaintiff played no role in procuring a buyer, and defendant/owners procured their own buyer after broker/plaintiff's exclusive right to sell agreement expired. In *Coldwell Banker* the Superior Court held that the broker was not entitled to commission where the written contract established that recovery was not permitted due to unfulfilled conditions. Here, Plaintiff undoubtedly procured the tenants-turned-buyers for the property. Whether the contractual conditions were fulfilled—i.e. whether the tenants were ready, willing, and able to purchase the property when procured—remains at issue.

Plaintiff's claims continue to represent a question of fact and the evidence provided could allow a reasonable jury to conclude that Defendants' refusal to pay lease extension fees subsequent to one orally waived fee, and their refusal to pay the commission for procuring a buyer for their property violated the parties' contract.

**a. Plaintiff's Breach of Contract Claim Presents a Genuine Issue of Material Fact Despite the Expiration of the Rental Listing Agreement**

The term of the contract at issue was from May 19, 2014 to May 19, 2015, and Defendants argue that the nature of a listing contract means it may not exceed one year, that the exclusive agreement was nullified, and that they do not owe Plaintiff their initially agreed upon fees and commissions. Defendants rely on *Senderling* to argue that upon expiration of an exclusive agreement, the agency relationship becomes non-exclusive and the agreed-upon fees tied to the exclusive agreement are no longer binding. Notably, in *Senderling* the defendant/owner sold the property without assistance from the broker after the expiration of the exclusive agreement period. The broker in *Senderling* had nothing to do with the procurement of a buyer for the defendant/owner's property, and the Pennsylvania Superior Court found for the defendant/owners, denying plaintiff/broker's a finder's fee. The facts in *Senderling* diverge from the facts in the instant matter, where Plaintiff Fox and Roach LP procured tenants who renewed their lease twice before ultimately purchasing the property. Plaintiff secured the tenants-turned-owners for the property in this matter, which presents a genuine issue of material fact as to whether Plaintiff is entitled to the later lease extension fees or the five percent commission initially bargained for.

Plaintiff counters that when a tenant procured during the term of an exclusive agency agreement ultimately purchases the property set forth in the agreement, the relationship between the parties still survives with respect to the rights and entitlements of the broker, despite expiration of the exclusive agency agreement. *See Situs Properties, Inc. v. Peter Roberts Enterprises*, 2005 Phila. Ct. Com. Pl. LEXIS 20, *3, 8 (Pa. Com. Pl. Jan. 26, 2005) (holding that the exclusive agency agreement continued to control the commission relationship between Situs

Properties, Inc and Peter Roberts Enterprises although the agreement expired). Here, the Agreement between Plaintiff and Defendants stated:

> Owner agrees to pay the same fee [the One Month's Rent] to Broker for renewals, extensions or additional leases where the original lease resulted from Broker's services or any other broker's services where the tenant was procured during the term of this Contract.
>
> (C) Paragraph 5(B) will survive this Contract.

Exhibit "A" at ¶ 5 attached to Pl.'s Resp. Stip. Facts.

There remains a genuine issue of material fact as to Plaintiff's breach of contract claims, and a jury could reasonably find that the Agreement for lease extension fees and a five percent commission was broken when Defendants refused to pay Plaintiffs the contracted amounts.

### b. Plaintiff's Oral Waiver of One Lease Extension Commission Did Not Automatically Waive Any Right to Future Commissions

Defendants do not dispute that the contract at issue assured Plaintiff a five percent commission for producing a buyer for the property. Instead, Defendants argue that Plaintiff waiving the $8000.00 commission for the first lease extension meant that Plaintiff waived all subsequent lease extensions and the five percent commission. However, Defendants presented no evidence or supporting law to establish that Plaintiff's oral waiver of one lease extension commission created an oral modification of contract and waived the right to future commissions. In fact, Plaintiff's real estate agent Ms. Patricia Billock disputed Defendants' contention that the oral waiver of the finder's fee for one lease extension excused all future commissions in her deposition, stating: "if the tenants buy the property, we will not waive the 5 percent commission

we are due. And I clearly remember that conversation." *See* Deposition of Patricia Billock at 40:10-13 attached to Pl.'s Resp. Stip. Facts as Exhibit "D."

While Defendants' analysis with regard to the waiver of subsequent lease extension fees might hold water, the significant difference between the $8000.00 lease extension commission and the five percent sale commission of $102,500.00 undergird Plaintiff's contention that they did not agree to waive the sale commission. Whether or not the oral agreement to waive the first lease extension fee is enforceable, the inconsistencies regarding the subsequent lease extension fees and the five percent commission create a genuine issue of material fact as to what fees Plaintiff may be owed. As such, Defendant's motion for summary judgement is denied with respect to Plaintiff's claim for breach of contract.

### c.   Plaintiff's Claim for Unjust Enrichment Presents a Genuine Question of Material Fact

To state a claim for unjust enrichment, a plaintiff must show: (1) benefits conferred on the defendant by the plaintiff, (2) appreciation of those benefits by the defendant; and (3) acceptance and retention of those benefits under circumstances such that it would be inequitable for the defendant to retain those benefits without the payment of value. *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000). For a real estate broker to be entitled to her commission, (1) she must have a contract of employment, (2) she must have a purchaser who is ready, willing and able to purchase the property upon terms satisfactory to the seller, and (3) her efforts must constitute the efficient procuring cause of the sale. *Strout Realty, Inc. v. Haverstock*, 382 Pa. Super. 340, 343 (1989). *See also Appmobi, Inc. v. Monastiero*, 2015 Pa. Dist. & Cnty. LEXIS 10460, *9 (Pa. Comm. Pl. June 11, 2015).

Plaintiff maintains that it had a contract with Defendants, that they procured a purchaser who was ready, willing, and able to purchase the property, and that Defendants benefited from the lease, lease renewals, and subsequent sale of the property. Defendants disagree; they argue that the tenants found were not financially prepared to buy the property and could only do so with Defendants' help.

Plaintiff alleges that the tenants they secured did have the financial wherewithal to purchase the property, as established by tenants' past property interest in New York City and one tenant's income as a high-level Goldman Sachs executive,[2]  where she had worked for twenty years. Pl.'s Resp. Opp. Cross-Motion Summ. J. Page 13 (ECF No. 20). Further, Plaintiff contends that tenants sold property in Brooklyn, New York for $1,585,000 in 2011, illustrating their access to capital and ability to afford a similar mortgage.[3] *Id.* at 14-16.

Because they procured viable tenants who ultimately bought the property, which benefitted the Defendants, Plaintiff alleges that Defendants seek to unjustly enrich themselves by keeping Plaintiff's fair share of the profits from this property sale. A reasonable jury could find that Plaintiff's claims and evidence meet the elements of the procuring cause doctrine and establish that Defendants owe them the contracted fees from the sale of the property. As such, Defendants' motion for summary judgement is denied with respect to Plaintiff's claims for unjust enrichment.

---

[2] Tenant was the Head of Private Wealth Management for the Mid-Atlantic region, and the Sports & Entertainment Practice at Goldman Sachs.
[3] Plaintiffs explain that the tenants made a 20% down payment on the property in the instant matter, so their mortgage would be $1,640,000 and the monthly mortgage payment would have a similar amount as their monthly rent as tenants.

**d.  Plaintiff's Cross-Motion for Summary Judgment**

Plaintiff's cross-motion for summary judgment depends on the genuine questions of material fact expounded upon above, including whether the tenants Plaintiff procured were ready, willing, and able to occupy the property, and whether their exclusive rental listing agreement entitles them to the contracted for fees when the purchase occurred outside of the dates of the contract. A reasonable jury could find for the Defendants, and as such, Plaintiff's cross-motion for summary judgment is denied with respect to all claims.

## IV.  CONCLUSION

Given that a genuine question of material fact exists in this case, both motions for summary judgment are **DENIED**.

An appropriate order follows.